# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HARRY JOSEPH VANN, ) | |
| ) | |
| Plaintiff, ) | Case No. 16-CV-440-JED-FHM |
| v. ) | |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Before the Court is the Report & Recommendation ("R&R") (Doc. 19) of United States Magistrate Judge Frank H. McCarthy on review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying the Plaintiff, Harry Joseph Vann, disability benefits. Judge McCarthy recommends that the Court affirm the Commissioner's decision finding Plaintiff not disabled. Mr. Vann filed a timely Objection (Doc. 20) to the R&R, and he requests that the Court "reverse and/or remand this matter for proper consideration." (Doc. 20 at 11). Reviewing the Objection de novo, the Court has considered the Administrative Record ("Record") (Doc. 13), the parties' briefs, the R&R, Plaintiff's Objection, and the Commissioner's Response (Doc. 21), and concludes that the Commissioner's determination should be affirmed and the R&R should be accepted.

## I.   Background

Judge McCarthy accurately summarized the background of plaintiff's disability claim and the decision of the Administrative Law Judge (ALJ) (Doc. 19 at 1-3), and the Court adopts that summary. Plaintiff objects to the R&R on several grounds, which will be addressed below.

## II. Standard of Review

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." The Court's task of reviewing the Commissioner's decision involves determining "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "It is 'more than a scintilla, but less than a preponderance.'" *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Martinez v. Barnhart*, 444 F.3d 1201, 1204 (10th Cir. 2006) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

## III. Specific Objections

### A. Dr. Kumar's Opinion

The Record contains "Progress Notes" from Plaintiff's visit with Dr. Laju Kumar on September 3, 2013. (R. 429-431). It appears that Plaintiff told Dr. Kumar during this visit that his back pain was a "lot better" and that he was "using his cane when [his] back hurts off and on, more in the am." (R. 429). At the end of the notes, Dr. Kumar wrote: "Medically necessary to use a cane when in back pain." (R. 431). Plaintiff asserts that the ALJ erred in failing to consider and weigh this comment as a medical opinion.

The federal regulations broadly define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). "It is the ALJ's duty to give consideration to all the medical opinions in the record." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing C.F.R. §§ 404.1527(c), 416.927(c)). The ALJ "must also discuss the weight he assigns to such opinions." *Id*.

The Court finds that Dr. Kumar's comment regarding the need for a cane is a medical opinion, as it reflects—to some extent—the doctor's judgment regarding the nature and severity of Plaintiff's back pain. However, "the ALJ's failure to adequately discuss a physician's opinion can be harmless." *Bledsoe ex rel. J.D.B. v. Colvin*, 544 F. App'x 823, 826 (10th Cir. 2013) (unpublished) (citing *Keyes-Zachary*, 695 F.3d at 1161-65). Here, Dr. Kumar only states Plaintiff must use a cane "when in back pain"; he does not provide information on how often this might occur, other than Plaintiff's self-reporting that he uses a cane "off and on." It is impossible to glean from this whether or not Plaintiff's back pain and intermittent need for a cane affects his ability to work. Dr. Kumar's opinion, then, is not necessarily inconsistent with the ALJ's residual functional capacity ("RFC") assessment that Plaintiff can perform medium work—especially considering Plaintiff's testimony that he could mop floors for eight hours a day with regularly scheduled breaks, as long as he takes his pain medication (R. 56). The Court finds that the ALJ's error in failing to discuss this medical opinion is harmless. *See Keyes-Zachary*, 695 F.3d at 1165 (finding error harmless where ALJ failed to assign weight to a medical opinion, but where limitations assigned by physician were not inconsistent with those found by the ALJ).

B.  **Physical Limitations in the RFC**

Plaintiff's second objection concerns the ALJ's failure to obtain a medical opinion regarding Plaintiff's physical limitations. The undersigned agrees with Judge McCarthy in finding no error here.

Because disability hearings are nonadversarial, "the ALJ has a duty 'to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997)). "This duty to develop the record pertains even if the claimant is represented by counsel," as the Plaintiff was in this case. *Id*. (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993)). "Ordinarily, the claimant must in some fashion raise the issue sought to be developed which, on its face, must be substantial." *Id*. (quoting *Hawkins*, 113 F.3d at 1167). "Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Id*. (quoting *Hawkins*, 113 F.3d at 1167). If the claimant satisfies this burden, the ALJ has the responsibility to order a consultative examination "if such an examination is necessary or helpful to resolve the issue of impairment." *Hawkins*, 113 F.3d at 1167.

In her decision, the ALJ in this case specifically found that Plaintiff's lumbar sprain was a severe impairment. (R. 21). This strongly suggests Plaintiff satisfied his burden such that the ALJ would need to order a consultative examination to determine Plaintiff's functional limitations. However, "the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins*, 113 F.3d at 1167. In the absence of a request by counsel for further development of the record, the court "will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." *Id*. at 1168.

Here, counsel for Plaintiff at the hearing did nothing to suggest that further development of the Record was necessary.¹ Moreover, the Court finds that the need for further development is not clearly established in the Record. Instead, there is considerable evidence in the Record that supports the ALJ's determination that Plaintiff is capable of performing "medium" work. Plaintiff's own testimony was that he could lift approximately 30 pounds (R. 57), sit for approximately two hours before needing to change positions (R. 55), and mop floors for a total of eight hours a day with pain medication (R. 56). He also testified that he generally does not have difficulty helping with household chores. (R. 62).

Furthermore, as noted by the ALJ, the medical evidence indicates that (1) his x-rays have been unremarkable, showing no fracture, dislocation, or spondylolisthesis (R. 370, 373, 454); (2) he presents with no crepitus, laxity in the peripheral joints, or external manifestation of a degenerative spine (R. 452); (3) his intrinsic and extrinsic muscle strength is symmetrical (*id.*); (4) he consistently shows no obvious muscle weakness, instability, or abnormal gait (R. 382, 386, 391, 395, 399, 419, 424, 430, 433, 447, 452, 470, 475); and (6) his straight leg raise was negative (R. 430). The ALJ further noted the conservative diagnoses given to him (*see, e.g.*, R. 452), as well as the conservative treatment prescribed (R. 401). She also considered Plaintiff's descriptions of his daily activities. (R. 260-265, 269-276).

In consideration of the full Record, the Court finds that the ALJ's assessment of Plaintiff's physical limitations is supported by substantial evidence and that the ALJ did not err in failing to further develop the Record.

---

¹ Counsel's only request concerned adding new medical records from recent visits to a behavioral health clinic. (R. 42). The ALJ left the Record open for ten days to allow counsel to submit those new medical records. (*Id.*).

C.  **Mental Limitations in the RFC**

Plaintiff makes several arguments for why the ALJ erred in determining Plaintiff's mental limitations. First, Plaintiff asserts that the ALJ erred in rejecting Dr. Burnard Pearce's opinion that Plaintiff has "marked limitations" with regard to understanding, remembering, and carrying out detailed instructions. Any error here is harmless, as the RFC is consistent with Dr. Pierce's opinion in that it limits Plaintiff to "simple tasks."

Plaintiff further asserts that the ALJ erred in giving little weight to Dr. Pearce's opinion that that the claimant has "marked limitations" with regard to interacting appropriately with the general public. The Court finds no error here. There is substantial evidence in the Record to support the ALJ's assessment that Plaintiff is able to interact appropriately with others. (*See* R. 231, 301, 339, 408, 416, 465, 472).

Plaintiff also alleges that the ALJ "did not include Plaintiff's severe dyslexia or major depression with psychotic features diagnosed by Dr. Rippy in her 'severe' impairments." (Doc. 20 at 9). This assertion is incorrect. The ALJ's finding regarding Plaintiff's severe impairments specifically included "a learning disability" and "depression." (R. 21).

Plaintiff's last argument regarding the ALJ's RFC assessment concerns Dr. Alyssa Rippy's opinion that Plaintiff "is not competent to independently manage his own funds in his best interest," that he is "unable to read, write, or do written mathematical calculations," that he "has to have help with all financial transactions," and that he cannot use a computer. (R. 411). Plaintiff argues that the ALJ erred in failing to include the specific limitations from Dr. Rippy's opinion in the RFC after giving the opinion "significant weight."

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184,

6

at *3.  The ALJ's RFC assessment for Plaintiff provides, in relevant part, that he is "limited to simple tasks and cannot perform jobs requiring him to read or write in the performance of his job duties" (R. 23).  The jobs identified by the vocational expert as jobs Plaintiff could perform—including his past relevant work—all require, according to the DOT, the ability to add and subtract two-digit numbers; multiply and divide 10's and 100's by 2, 3, 4, and 5; perform the four basic arithmetic operations with coins as part of a dollar; and perform operations with units such as cup, pint, quart, inch, foot, yard, ounce, and pound.  (DOT 318.687-010, 1991 WL 672755; DOT 317.687-010, 1991 WL 672752; DOT 921.685-026, 1991 WL 688083; DOT 920.687-014, 1991 WL 687964; DOT 920.687-026, 1991 WL 687967; DOT 524.687-018, 1991 WL 674400).  Plaintiff advances a broad interpretation of Dr. Rippy's opinion to conclude that Plaintiff cannot perform these listed mathematical tasks.

First, it is clear from reading Dr. Rippy's report in its entirety that Plaintiff's primary difficulty with math is decoding *written* math.  She notes his "inability to calculate numbers lined or one over the other, difficulties with reading place value," and tendency to "miswrit[e] numbers backwards."  (R. 409).  Though she states that "he can only do the simplest mathematic calculations" (R.410), Plaintiff was able to subtract by serial sevens using his fingers during the evaluation (R. 411) and his most recent Function Report states that he is able to count change (R. 300).  The Court thus agrees with Judge McCarthy's analysis that Plaintiff's inability to complete written mathematical calculations and his inability to use a computer are incorporated within the RFC's reading and writing limitation.

Furthermore, Dr. Rippy's opinion that Plaintiff "has to have help with all financial transactions" is best interpreted as concerning his own personal finances—not all mathematical calculations.  Dr. Rippy's report provides that Plaintiff is unable "to manage benefit payments in

7

his/her own interest" and "is not competent to independently manage his funds in his own best interest." (R. 407, 411). Moreover, in Plaintiff's most recent Function Report, he states that he cannot fill out a check or money order or use a debit card without assistance, and that he needs help from his bank to keep from overdrawing on his checking account. (*Id*.). To the extent these difficulties are not encapsulated within the RFC's reading and writing limitation, the Court agrees with Judge McCarthy's analysis that an inability to handle one's own financial transactions is not sufficiently work related to be included in the RFC.

        D.        **Step Four Findings**

After determining Plaintiff's RFC, the ALJ found that he was able to perform his past relevant work as a dishwasher/general kitchen helper and as a fast food cook (or cook helper). Judge McCarthy determined that the kitchen helper job, as it was performed by Plaintiff, appeared to go beyond Plaintiff's RFC for medium work. Judge McCarthy found "no such infirmity . . . with respect to Plaintiff's past relevant work as a cook's helper." (Doc. 19 at 9). In his Objection, Plaintiff appears to have confused the two jobs. He argues only that he cannot perform the duties of kitchen helper, which confirms, instead of contradicts, the R&R. (*See* Doc. 20 at 10-11).

Even assuming that Plaintiff meant to object to Judge McCarthy's finding regarding the cook helper job, the Court finds no reversible error. The ALJ concluded that Plaintiff was able to perform the cook helper job as it was "actually performed by him in the past." (R. 29). This finding is supported by substantial evidence in the Record. As succinctly stated by Judge McCarthy, "Plaintiff performed his past work with his reading, writing, and math limitations, so obviously those limitations did not preclude performance of that work." (Doc. 19 at 8). In fact, during his hearing before the ALJ, Plaintiff stated, "[T]hey knew I didn't know how to read, so they kept me on the grill." (R. 47). Plaintiff points to no evidence supporting the idea that his

8

mental limitations have worsened since he held this job. As for his physical limitations, the cook helper position is listed as "medium" work, which is within his RFC. Also, the Court notes that Plaintiff held the cook helper job after his back injury occurred. (R. 46, 50).

Because the finding that Plaintiff could perform his past relevant work as a cook helper is supported by substantial evidence, there exists a sufficient basis for denying disability. The Court need not address Plaintiff's step five argument.

IV. **Conclusion**

Having found no reversible error in the ALJ's decision, upon concluding that the ALJ applied the correct legal standards and the decision is supported by substantial record evidence, and agreeing with Judge McCarthy's R&R, the Court overrules Plaintiff's Objection (Doc. 20). Accordingly, the Court **accepts** the R&R (Doc. 19) and the recommendation that the Commissioner's decision finding plaintiff not disabled be affirmed. Accordingly, the Commissioner's decision is **affirmed**. A separate Judgment will be entered forthwith.

**DATED** this 26th day of February, 2018**.**

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE